IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Power Beverage LLC, | ) | |
| | ) | C/A No. 06:12-931-TMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION & ORDER** |
| | ) | |
| | ) | |
| Side Pocket Foods Company, | ) | |
| d/b/a Side pocket Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

_____

This matter is before the court on Defendant Side Pocket's ("Side Pocket's") motion to dismiss for lack of personal jurisdiction and/or improper venue or, alternatively, to transfer to the District of Oregon pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses and in the interests of justice. Plaintiff Power Beverages ("Power Beverages") opposes the motion. For the reasons below, the court denies the motion, and transfers this action to the District of Oregon.

## I. Background Facts

Power Beverages is a South Carolina limited liability company and its principal place of business is located in Greenville, South Carolina. (Compl. ¶ 1). Power Beverages was formed on December 24, 2008, by Richard W. Hills, Jr. ("Hills"), and Paul Kidd, also known as Ishmael Hassan, ("Kidd") to manufacture and sell Ying Yang

vodka. (Compl. ¶ 4).

On December 29, 2008, Power Beverages contracted with Side Pocket, an Oregon distillery, for the production of Ying Yang Vodka and Ying Yang Brown Sugar Vodka. (Comp. ¶¶ 2; 5-6).  Hills and Kidd visited Side Pocket in Oregon on several occasions. (Dkt. # 9 Attach. # 2 - William Meyers Decl. ¶ 5).  The contract provided that the vodka was to be shipped "where specified in writing by Richard Hills."  (Compl. ¶ 5).

On December 30, 2008, Power Beverages wired $129,259.20 to Side Pocket as a prepayment for the bottles. (Compl. ¶ 8).  In February 2009, Power Beverages sent an additional payment of $12,600.00 for the cost of bulk spirits, caps, and corks for 20,000 bottles.  (Compl. ¶ 9).  On May 15, 2008, 280 cases of Ying Yang Vodka were delivered to a South Carolina licensed distributor, Carolina Distribution, LLC.  (Compl. ¶ 12).  Then, on May 28, 2009, Power Beverages sent Side Pocket $7,190.40 to pay an invoice.  (Compl. ¶ 9). In July 2009, the remaining Ying Yang Vodka product had been produced and  was being stored by Side Pocket. (Compl. ¶¶ 13-14).  The Ying Yang Brown Sugar product was never produced and Power Beverages was never invoiced for any of this product.  (Compl. ¶ 15).

On October 22, 2009, Kidd sent Hills a letter alleging a breach of contract, advising that Kidd was withdrawing from Power Beverages, demanding that Power Beverages cease operations, and reclaiming the Ying Yang trademark.  (Compl. ¶ 16). The letter was copied to Side Pocket.  (Dkt. # 11 - Attach. # 5 Ex. G - Richard W. Hills, Jr.  Decl.).

On November 16, 2009, Side Pocket sent a letter to Power Beverages stating that the production agreement was going to be terminated in thirty days. (Compl. ¶ 18). Side Pocket also sent Power Beverages a final invoice for $60,849.19 for taxes, storage

fees, production costs, and sample costs owed, and asked that all product be removed from Side Pocket within two weeks. (*Id.*; Compl. Ex. A). Power Beverages, however, contested the balance due and contended that there was actually a $73,382.40 credit balance remaining from the original advance payment of $129,259.20. (Compl. ¶ 20; Dkt. # 11 Attach. # 5 - Hills Decl. ¶ 26).

On January 15, 2010, Kidd authorized Power Beverages to release the remaining inventory of Ying Yang Vodka to Star Beverages/Starline Distributors LLC. (Compl. ¶ 25). Side Pocket shipped the inventory to a warehouse in Los Angeles, California. (Comp. ¶ 29). Power Beverages now alleges that Side Pocket knew Kidd had withdrawn from Power Beverages in October 2009, and should not have relied on his authorization to release the remaining inventory. (Comp. ¶¶ 16-17). Power Beverages obtained a preliminary injunction in California against Kidd and subsequently reached a settlement with Kidd which included the release of the vodka to Power Beverages. (Compl. ¶ 30).

Power Beverages then filed this action against Side Pocket alleging claims for breach of contract, breach of contract accompanied by a fraudulent act, conversion, unfair trade practices, and conspiracy.

## II. Applicable Law

When a district court decides a pretrial personal jurisdiction dismissal motion without an evidentiary hearing, a plaintiff must prove a prima facie case of personal jurisdiction. *See Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993). To determine whether plaintiffs have satisfied this burden, the court may consider the "pleadings, affidavits, and other supporting documents presented to the court" and must construe them in the light most favorable to plaintiff and draw all inferences in his favor.

*Mylan Labs.*, 2 F.3d at 62.

A federal court may exercise personal jurisdiction over a non-resident "corporation if such jurisdiction is authorized by the long-arm statute of the state in which it sits and application of the long-arm statute is consistent with the due process clause of the Fourteenth Amendment." *Consulting. Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009). Because South Carolina courts construe the South Carolina long-arm statute to extend to the outer reaches of the Fourteenth Amendment, the court's statutory inquiry merges with its constitutional inquiry. *See, e.g., Cockrell v. Hillerich & Bradsby Co.*, 611 S.E.2d 505, 508 (S.C. 2005). Under the constitutional inquiry, a court has personal jurisdiction over those persons with "sufficient minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Consulting Eng'rs*, 561 F.3d at 277 (internal quotation marks omitted).

To meet this burden, a plaintiff must demonstrate that the defendant is subject to either specific or general jurisdiction in the forum state. *Dtex, LLC, v. BBVA Bancomer, S.A.*, 405 F.Supp.2d 639, 644 (D.S.C. 2005). Whether personal jurisdiction is general or specific depends upon the degree of defendant's contacts with the forum state. General personal jurisdiction exists when a defendant's contacts with the forum state are "continuous and systematic," thereby permitting the exercise of jurisdiction for actions unrelated to defendant's contacts with the state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 & n. 9 (1984).

Specific jurisdiction is more narrow and exists when the suit arises out of, or is related to, the defendant's contacts with the forum. *Helicopteros Nacionales*, 466 U.S. at 414 & n. 8. In determining whether the due process requirements for specific personal

4

jurisdiction exist, the court must consider "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (internal quotation marks omitted).

### III. Discussion

#### A.  Motion to Dismiss

##### I.  Personal Jurisdiction

Reviewing the Complaint, the allegations regarding the personal jurisdiction of Defendant Side Pocket are that Side Pocket is an Oregon corporation doing business in Oregon; "[t]he contract was one [providing] that Side Pocket was to supply goods in the state of South Carolina and/or the goods were sold to Power Beverages with the reasonable expectation that the goods would be used or consumed in South Carolina, and the goods were so used and consumed in South Carolina;" Side Pocket "maintained an inventory of its alcohol in Grenville, South Carolina on consignment;" and "[a]lcohol from Side Pocket's inventory was regularly introduced into the commerce in South Carolina."  (Compl. ¶¶ 2, 35, 36).

In its memorandum opposing the motion to dismiss, Power Beverages alleges Side Pocket engaged Carolina Distribution to assist Side Pocket in penetrating the South Carolina market.  (Pl.'s Mem. Opp. Mot. to Dismiss at 6).   Specifically, Power Beverages contends that Side Pocket provided Carolina Distribution with twenty-four of Side Pocket's Department of the Treasury Alcohol and Tobacco Tax and Trade Bureau label registrations and appointed Carolina Distribution as its agent to warehouse and

sell Side Pocket products in South Carolina. *Id*. at 7. Further, Power Beverages contends that Side Pocket, shipped approximately 495 cases of its brands to a warehouse in Greenville, South Carolina via Carolina Distribution, Aardvark Beverages, LLC ("Aardvark"), a licensed distributor in South Carolina, received the goods and sold them throughout South Carolina, and Aardvark advertised Side Pocket's brands in the Southern Beverage Journal in 2009. *Id*.

Side Pocket, however, contends that this court lacks personal jurisdiction over it. Side Pocket argues, inter alia, that it is not registered to do business in South Carolina, and has never owned any property in South Carolina, nor maintained an office in South Carolina. (Def.'s Mem. Supp. Mot. to Dismiss at 1-2). Further, Side Pocket contends it has not paid taxes in South Carolina, appointed any agent for service of process in South Carolina, or entered into a contract to be performed in South Carolina. *Id*.

In its reply memorandum, Side Pocket contends it did not hire Carolina Distributors or Aardvark to assist it in penetrating the South Carolina market. (Def.'s Reply Mem. at 10). Side Pocket contends that when it was shipping the Ying Yang vodka to South Carolina, Side Pocket agreed to fill up the rest of the truck with its own products and Carolina Distributors agreed to pay paid for the shipping and the products. *Id*. Side Pocket contends it took no part in registering the brands in South Carolina and had no knowledge regarding these registrations and did not know about the advertisement in the Southern Beverage Journal. *Id*. Side Pocket alleges when Aardvark stopped paying for the products, Side Pocket requested an inventory and the return of the remaining Side Pocket products which remained in Aarvark's possession. *Id*.

Here, the presence of general jurisdiction is admittedly a close question.

6

However, the record shows a lack of many of the factors traditionally associated with a physical presence in the forum state, such as an official agent, employees, a business license, incorporation, or corporate facilities, which would support the existence of general jurisdiction.   Additionally, even assuming Side Pocket sought to register its brands in South Carolina, this would be insufficient to satisfy minimum contacts.  *See, e.g., Salley v. Heartland-Charleston of Hanahan, SC, LLC*, 2010 WL 5136211 *5 (D.S.C. 2010)(internal citation omitted)(noting that fulfilment of paperwork to satisfy state regulations was insufficient to establish minimum contacts).  Furthermore, "[e]ven an 'application to do business and the appointment of an agent for service to fulfill a state law requirement is of no special weight.'"  *Id.* (*citing Ratliff v. Cooper Labs., Inc.*, 444 F.2d 745, 748 (4th Cir.1971)).

The facts do not support a finding that Side Pocket has had such continuous or systematic contacts with South Carolina sufficient to support general jurisdiction. Accordingly, the court cannot conclude that Side Pocket's activities within South Carolina were "continuous and systematic" or "fairly extensive," such that exercising general jurisdiction would not offend "traditional notions of fair play and substantial justice."  *See Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir.1993) (holding "only when the continuous corporate operation [sic] within a state is thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities may a court assert general jurisdiction over a corporate defendant." (quotation marks and citations omitted)). Lacking general personal jurisdiction over Side Pocket, the court turns to the three part test set out above to determine if specific jurisdiction is proper.

As to specific jurisdiction, a contract with a South Carolina party cannot alone

establish sufficient minimum contacts in South Carolina. *Wells American Corp. v. Sunshine Electronics*, 717 F.Supp. 1121, 1126 (D.S.C. 1989) ("it is well established that an 'individual's contract with an out-of-state party alone can[not] automatically establish sufficient minimum contacts in the other party's home forum.'") (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)); *see also Superfos Invs. Ltd. v. Firstmiss Fertilizer, Inc.,* 774 F.Supp. 393, 398 (E.D.Va.1991) (stating that "due process requires that there be more than a simple connection between the contract which is being sued upon and the state asserting jurisdiction. A contract which is accepted and becomes effective in another forum generally will not satisfy minimum contacts." (citations and quotation marks omitted.)). The court must look to other factors such as: (1) who initiated the agreement; (2) where the negotiations occurred; (3) the extent of communication; (4) where the agreement was executed; and (5) where the agreement was to be performed. *Masselli & Lane, PC v. Miller & Schuh, PA*, 2000 WL 691100 (4th Cir. May 30, 2000) (internal citation omitted).

Here, the contract Side Pocket entered into with Power Beverages, by itself, is insufficient to establish personal jurisdiction. *See Wells Am. Corp.*, 717 F. Supp. at 1126. The contract was negotiated, executed, and primarily performed in Oregon and the alleged breach took place in Oregon, not South Carolina. Further, all of the alleged omissions and wrongs asserted by Power Beverages occurred in Oregon. *See Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners*, 229 F.3d 448, 452 (4th Cir.2000) (finding no personal jurisdiction when the contract called for performance primarily outside the state even though some acts required of the defendant necessitated its contact with the forum). Additionally, the Fourth Circuit "has given great weight to the question of who initiated the contact between the parties."

*Worldwide Ins. Network, Inc. v. Trustway Ins. Agencies, LLC*, No. 1:04CV00906, 2006 WL 288422, at *3 (M.D.N.C. Feb. 6, 2006) (citation omitted).

Finally, while the contract contains a choice of law provision providing that South Carolina law controls, a choice of law provision is not dispositive and is rather only one factor to consider in determining if personal jurisdiction exists. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 281 (4th Cir. 2009) (affirming district court's dismissal of lawsuit because plaintiff failed to demonstrate that defendants had sufficient contacts, despite the existence of a choice of law provision in a contract between the parties).

Additionally, the court finds that Power Beverages' allegations regarding tortious conduct are also not sufficient to establish specific jurisdiction over Side Pocket in this case under the "effects test."[1] Pursuant to the "effects test," a court "may exercise [personal] jurisdiction over a non-resident defendant who is a 'primary participant[ ] in an alleged wrongdoing intentionally directed' at a resident in the forum state." *AARP v. Am. Family Prepaid Legal Corp.*, 604 F.Supp.2d 785, 799 (M.D.N.C. 2009).

The Fourth Circuit has set out a three prong effects test: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in a forum that can be said to be the focal point of the harm; and (3) the defendant expressly aimed tortious conduct at the forum in a manner that the forum can be said to be the focal point of it. *Consulting Eng'rs*, 561 F.3d at 280. The Fourth Circuit has interpreted the "effects test" narrowly. *See Young v. New Haven Advocate*, 315 F.3d 256, 263 (4th Cir.

---

[1]The Supreme Court applied the "effects test" in *Calder v. Jones*, 465 U.S. 783, 789–90 (1984). In *Calder*, the Court held that a California court could constitutionally exercise jurisdiction over a Florida citizen whose only material contact with California was to write a libelous story, directed at a California resident for a publication circulated in California, knowing that the injury would be felt by the California resident in her state.

2002); *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir.1997). Merely feeling the effects of out-of-state conduct "does not supplant the minimum contacts analysis," and "'[a]lthough the place the plaintiff feels the alleged injury is plainly relevant . . ., it must ultimately be accompanied by the defendant's own contacts with the state if jurisdiction over the defendant is to be upheld.'" *Consulting Eng'rs*, 561 F.3d at 280-81 (*quoting ESAB Grp*, 126 F.3d at 626). Furthermore, "the defendant [must] have expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity." *Id.* (internal citation omitted).

Here, the first element of the "effects test" is satisfied because fraud and conversion are  intentional torts. *See Baker v. Wheat First Sec.*, 643 F.Supp. 1420, 1431 (S.D.W.Va.1986). However, the conversion claim cannot meet the second element because "[t]he legal injury occasioned by the tort of conversion is deemed to occur where the actual conversion takes place." *United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 37 (1st Cir. 1999) (*citing Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 619 (5th Cir. 1989)). And by Power Beverages' own allegations, the vodka product and funds were converted in Oregon, not South Carolina. (Compl. at ¶¶ 47-50).

Moreover, as to the last prong of the test, the court concludes that South Carolina was is not the focal point of the alleged tortious activity. While Side Pocket knew Power Beverages was a South Carolina corporation, Side Pocket did not expressly aim its  alleged tortious actions at South Carolina. *See Young v. New Haven Advocate*, 315 F.3d 256, 262 (4th Cir. 2002)(declining to exercise personal jurisdiction over nonresident defendants who published an allegedly defamatory online article about the Virginia plaintiff, even though the defendants "were all well aware" that the plaintiff was employed and resided in Virginia, and that any harm suffered by plaintiff would

primarily occur in Virginia).  Based on the foregoing, Power Beverages has not show

that Side Pocket expressly targeted South Carolina.

### ii. Venue

Although the court finds that it does not have personal jurisdiction over Side

Pocket, the court declines to dismiss the action.  Pursuant to 28 U.S.C. § 1406(a), this

court has discretion to transfer this action if it is in "the interest of justice." *Saudi v.*

*Northrop Grumman Corp.*, 427 F.3d 271, 277 (4th Cir. 2005) (stating " Section 1406(a)

has been construed to permit transfers where personal jurisdiction is lacking in the

transferor court, but would be available in an alternative forum" (citation omitted)).[2]

Under 28 U.S.C.A. § 1391(b), an action may be brought in: 1) a judicial district where

any defendant resides, if all defendants reside in the same State, (2) a judicial district in

which a substantial part of the events or omissions giving rise to the claim occurred, or a

substantial part of property that is the subject of the  action is situated, or (3) a judicial

district in which any defendant is subject to personal jurisdiction at the time the action is

commenced, if there is no district in which the action may otherwise be brought.  28

U.S.C.A. § 1391(b).  As Side Pocket is located in Oregon and a substantial part of the

events giving rise to Power Beverages' claims occurred in Oregon, the court finds the

interests of justice warrant transferring this matter to the District of Oregon.

---

[2]Section 1406(a) provides:  "The district court of a district in which is filed a case
laying venue in the wrong division or district shall dismiss, or if it be in the interest of
justice, transfer such case to any district or division in which it could have been
brought." 28 U.S.C. § 1406(a).

**Conclusion**

For the foregoing reasons, Defendant's Motion to Dismiss (Dkt. # 9) is **DENIED**.

The Clerk of  Court is directed to transfer this action the to the District of Oregon.

**IT IS SO ORDERED.**


s/Timothy M. Cain
United States District Judge

Anderson, South Carolina
January 22, 2013

12